STATE OF MISSISSIPPI, USE OF PANOLA COUNTY, *v.* ABNER F. OLIVER ET AL.

1. COUNTY CONVICT CONTRACTOR. *Evidence. Receipt to sheriff. Laws 1894, p. 67, secs. 29 and 30; laws 1896, p. 146.*

   The receipts given by a county convict contractor to the sheriff for convicts (under laws 1894, p. 67, sections 29 and 30; as amended, laws 1896, p. 146), are *prima facie* evidence of the facts recited in them.

2. SAME. *Death of contractor. Liability of sureties and legal representative.*

   The county convict contractor is a quasi public officer, and his death terminates his contract. His estate and the sureties on his bond are answerable only for defaults occurring in his life, and for failure to redeliver, or tender, the prisoners to the sheriff upon his death.

From the circuit court, second district of Panola county.

HON. Z. M. STEPHENS, Judge.

The state, suing for the use of Panola county, appellant, was the plaintiff in the court below; Oliver, and others, appellees, were defendants there. The suit was upon the bond of one J. B. Wynne, deceased, who in his lifetime was the county convict contractor of Panola county, and the defendants were the sureties on his bond as such contractor and the administrator of his estate. Wynne became convict contractor on the first of February, 1897, and died May 28, 1897. Had he lived his contract would not have expired until the end of the year 1897. The suit was for alleged defaults occurring before and after Wynne's death.

On the trial the plaintiff offered in evidence a number of receipts given the sheriff for convicts by Wynne in his lifetime and after he became contractor. These receipts, on defendants objection, were excluded, and plaintiff duly excepted. The verdict of the jury and judgment of the court below was in plaintiff's favor for $291.75. Plaintiff appealed to the supreme court, and defendants prosecuted a cross appeal.

*Leland L. Pearson,* for appellant and cross appellee.

The law as in the Banks case, 66 Miss., 431, makes the contract an executed one and the contractor's liability fixed and absolute when, in the words of Cooper, J., "the prisoner is delivered, or offered to be delivered, to him" by the sheriff as provided by law. A most critical search of subsequent legislation fails to disclose any change in the law in this regard. Code of 1880, §§ 3157 and 3159; sections 18 and 19, laws of 1896, p. 146; section 6, laws 1894, p. 67.

The contract is not required to be let with reference to the moral character, personal skill or peculiar fitness of the contractor; on the other hand, this idea is especially negatived by the extreme jealousy of the lawmaker in stipulating just what is required of the contractor, and how and when it shall be done. The law does not provide that the contractor should possess any personal qualification whatever. It does not even

provide that he shall be a responsible person.   His personal fitness is nowhere, in terms or by possible implication, as much as suggested.   If the law provided that the contractor should work the convicts in any certain manner which required a peculiar personal skill on his part, an inference might arise that the contract was made in some sort with reference to this peculiar qualification, and it then might be argued with some plausibility that the contract was intended to be a personal one. As it is, the contractor may work the convicts at any sort of labor "not exceeding ten hours per day or from sun to sun." Not only is the peculiar personal fitness of the contractor not an element of the contract, but the law nowhere suggests the test or requirement of any certain amount of financial responsibility or worth on the part of the contractor.   It is the "best bidder being the person who will agree to pay the highest amount," etc., the law looking to the bond required for its guarantee of the faithful performance of the contract by whomsoever entered into.

The fact that the bondsmen may have executed the bond because of their belief in the personal fitness and responsibility of Wynne in properly and successfully handling the convicts, cannot avail them as a defense against liability on the bond.   If Wynne was liable, so are they, notwithstanding anything they may have expected of or relied upon from Wynne personally. So we conclude, and so contend, that this is not a personal contract, attaching only to Wynne personally and dying with him, but it is one that his personal representative can fully and fairly execute, and the law will so require.

The receipts given to the sheriff for convicts by Wynne in his lifetime were clearly competent evidence, and the court below erred in excluding them.

*Lowrey & Perkins*, for appellees and cross appellants.

The first and most important question in this case, and the settlement of which, if in favor of cross appellants, will obviate the necessity of settling any other question, is "whether or

not the legal representative of the county contractor was bound
to continue to work the convicts and pay their wages after the
death of the contractor." In other words, was the continued
existence of the contractor essential to the performance of the
contract?

We invite the attention of the court especially to the case of
*Cox* v. *Martin*, 75 Miss., 229, and the note to *Chamberlain* v.
*Dunlap*, 22.Am. St. Rep., there cited. These authorities set-
tle two principles, viz.: First, when the continued existence of
the particular person contracted with is essential to the comple-
tion of the contract, his death terminates the contract. Second,
the line of demarkation is not very clearly marked in some in-
stances, and the facts and circumstances of each particular case
will be taken into account in determining whether the contract
was purely personal in its nature, and was therefore determined
by the death of the contractor.

Before proceeding to apply these principles to this case, we
desire to call the attention of the court to the statutes on this
subject and to the progressive changes and modifications of
these statutes. The plaintiffs in the court below relied upon
the decision of this court in *State, use, etc.*, v. *Banks*, 66
Miss., 431.

The code of 1880, § 3157, made the county contractor, upon
receiving notice of the conviction of prisoners, "responsible
on his bond for the fine and costs due from such prisoners, and
for their feed in jail," and, by § 3161, he was required, "on
the first Monday of June and December each year," to make
payment into the county treasury "at once of the amount of
his liability on account of prisoners delivered," etc. Section
3162 allowed the contractor to work the convict during his
term of imprisonment without wages, and, after that time
expired, to work him long enough, at the rate prescribed, to
reimburse himself the amount paid for fines and costs.

Under these statutes the court held the contractor absolutely
liable for the full fines and costs, regardless of sickness, es-

capes and pardons. We invite the court's especial attention to the language and reasoning of the court at the bottom of page 437 and top of page 438. This language simply construes the statute to mean what it says. The question of termination of the contract by death of contractor was not in that case.

We have given this extended notice to these statutes and this decision because of the contention by appellant (cross appellee) that this decision makes the contractor instantly liable for the fine and costs upon conviction of the prisoner, and that, as to prisoners convicted before his death, this liability was fixed on him and his sureties before his death, and was not removed by the death. It was the statute in force at that time, and not the decision of the court, that fixed this "instant" liability, and, even under that extreme statute and correspondingly extreme decision, the court never held that the death of the contractor would not have terminated the contract.

Our contention is that the obligation to pay or the payment of the fines and costs of the prisoners carried with it the right of the contractor to work the convicts until he was reimbursed, and that this was a personal right that did not survive to the legal representative. If we are correct in this, then, unquestionably, under the act of 1896, which is the result of progressive modifications and changes of statutes in favor of the contractors, the death of the contractor terminates the contract and relieves the contractor's estate and sureties from liability for "wages" that were never earned by the convicts because of his death.

Argued orally by *Leland L. Pearson*, for appellant and cross appellee, and by *Perrin H. Lowrey*, for appellees and cross appellants.

CALHOON, J., delivered the opinion of the court.

The receipts of a county convict contractor given to the sheriff were competent evidence of whatever they showed on their faces, and *prima facie* evidence that what there appeared was true, and it was error not to so hold. It was also error to

hold that the book of entries of the clerk of the Board of Supervisors of duplicates of these receipts was inadmissible.     Laws 1894, p. 67, sections 29 and 30; Code, § 1791.

Neither is conclusive, but either is *prima facie* evidence and enough to throw the burden on the contractor to show mistake by resort to the original judgments.

Under the acts of 1894, pp. 67 *et seq.*, as amended by the acts of 1896, pp. 146 *et seq.*, the death of the contractor ends his contract, and the Board of Supervisors should let a new one, the convicts, in the meanwhile, to revert to the custody of the sheriff.     *State* v. *Banks*, 66 Miss. 431, is without relevancy, the contractor in that case being alive and not dead.     Upon the death of the contractor his legal representatives and his bondsmen are liable only for the contract wages and any non-performance of contract up to his death, and for their failure to redeliver or tender the prisoners to the sheriff upon his death.     We think this the evident design of the legislature from the two acts.     Any other construction would leave the law in the shape it was in where convicts could not be hired, the very evil sought to be remedied.     Even under the law as it was when the case of *State* v. *Banks* was decided, we make no doubt the court would have held that death terminated the contract.     But such was not the case for decision.

The contractor by the terms of the law is a quasi public officer, and gives bond as such, and his term is fixed as such under contract to be made, and delicate and responsible duties are required of him, such as a Board of Supervisors should not devolve on any except a man of peculiar fitness.     The statute fixes the contract to be for monthly wages, using the word "wages," which does not appear in the old law, in reference to the liability of the contractor.     It is inconceivable that any sane man would become bondsman for a contractor under any other construction.

*Reversed on appeal and cross appeal, costs of appeal divided, and remanded.*